POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THOMAS LAMONTAGNE, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| TESLA, INC., ELON R. MUSK, ZACHARY J. KIRKHORN, and DEEPAK AHUJA, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. |  |

Plaintiff Thomas Lamontagne ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tesla, Inc. ("Tesla" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set

forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Tesla common stock between February 19, 2019 and February 17, 2023, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Tesla designs and manufactures electric vehicles, battery energy storage, solar panels and roof tiles, and related products and services. Tesla is headquartered in Austin, Texas and incorporated in Delaware. The Company's common stock trades on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "TSLA".

3. In 2014, Tesla announced Tesla Autopilot ("Autopilot"), a suite of purportedly advanced driver-assistance system ("ADAS") features including automated lane-centering, traffic-aware cruise control, lane changes, semi-autonomous navigation, and self-parking. In September 2014, all Tesla cars started shipping with the sensors and software necessary to support the Autopilot system. Since then, the Company has touted refinements and enhancements to the Company's ADAS and Autopilot features, including so-called "Full Self-Driving" ("FSD") software, which purportedly enables Tesla vehicles to drive autonomously to a destination entered in the car's navigation system.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants

had significantly overstated the efficacy, viability, and safety of the Company's Autopilot and FSD technologies; (ii) contrary to Defendants' representations, Tesla's Autopilot and FSD technologies created a serious risk of accident and injury associated with the operation of Tesla vehicles; (iii) all the foregoing subjected Tesla to an increased risk of regulatory and governmental scrutiny and enforcement action, as well as reputational harm; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5. On April 18, 2021, media outlets reported that a Tesla vehicle with "no one" driving it had crashed into a tree, killing two passengers near Houston, Texas in a "fiery" crash. A Harris County Precinct constable told local news station KPRC 2 that the investigation showed "no one was driving" the 2019 Tesla vehicle when the accident occurred.

6. On this news, Tesla's stock price fell $25.15 per share, or 3.4%, to close at $714.63 per share on April 19, 2021.

7. On August 16, 2021, media outlets reported that the National Highway Traffic Safety Administration ("NHTSA") had opened a formal investigation into Tesla's Autopilot system after a series of collisions with parked emergency vehicles.  The scope of the investigation included 765,000 vehicles, or nearly every vehicle that Tesla has sold in the U.S. since the start of the 2014 model year.

8. On this news, Tesla's stock price fell $31.00 per share, or 4.32%, to close at $686.17 per share on August 16, 2021.

9. On June 3, 2022, media outlets reported that NHTSA had issued a formal inquiry to Tesla about the Autopilot and FSD features for certain models of its vehicles after receiving complaints from more than 750 owners of the vehicles about sudden and unexpected braking with no immediate cause.

3

10.     On this news, Tesla's stock price fell $71.45 per share, or 9.22%, to close at $703.55 per share on June 3, 2022.

11.     On January 27, 2023, media outlets reported that the SEC was investigating statements made by Tesla and its Chief Executive Officer ("CEO"), Defendant Elon R. Musk ("Musk"), concerning the Autopilot system, including whether Musk made inappropriate forward-looking statements regarding the Autopilot system.

12.     On this news, Tesla's stock price fell $11.24 per share, or 6.32%, to close at $166.66 per share on January 30, 2023.

13.     On February 16, 2023, media outlets reported that NHTSA had ordered a recall of nearly 363,000 Tesla vehicles equipped with the Company's FSD "Beta" software, stating that the software may allow the equipped vehicles to act "in an unlawful or unpredictable manner," increasing the risk of a crash.

14.     On this news, Tesla's stock price fell $12.20 per share, or 5.69%, to close at $202.04 per share on February 16, 2023.

15.     Then, on February 18, 2023, media outlets reported that a Tesla vehicle had crashed into a fire truck that was responding to an earlier accident, killing the driver and injuring a passenger and four firefighters.  News reports linked the crash with prior reports of Tesla vehicles crashing into stationary emergency vehicles as a consequence of poorly performing ADAS technologies, increasing market and public concerns regarding the Autopilot system in Tesla's vehicles.

16.     On this news, Tesla's stock price fell $10.94 per share, or 5.25%, to close at $197.37 per share on February 21, 2023, the next trading day.

17.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

18.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

20.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Tesla maintains significant operations in this Judicial District, Defendants conduct business in this Judicial District, Tesla's headquarters were located in this Judicial District throughout the Class Period until December 2021, and a significant portion of Defendants' activities took place within this Judicial District.

21.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

22.     Plaintiff, as set forth in the attached Certification, acquired Tesla securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

23.     Defendant Tesla is a Delaware corporation with principal executive offices located at 1 Tesla Road, Austin, Texas 78725.   The Company's principal executive offices were

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

previously located at 3500 Deer Creek Road, Palo Alto, California 94304, until December 2021. Tesla's common stock trades in an efficient market on the NASDAQ under the ticker symbol "TSLA".

24.     Defendant Musk has served as Tesla's CEO at all relevant times.

25.     Defendant Zachary J. Kirkhorn ("Kirkhorn") has served as Tesla's Chief Financial Officer ("CFO") since March 2019.

26.     Defendant Deepak Ahuja ("Ahuja") served as Tesla's CFO from before the start of the Class Period to March 2019.

27.     Defendants Musk, Kirkhorn, and Ahuja are sometimes referred to herein collectively as the "Individual Defendants."

28.     The Individual Defendants possessed the power and authority to control the contents of Tesla's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Tesla's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Tesla, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

29.     Tesla designs and manufactures electric vehicles, battery energy storage, solar panels and roof tiles, and related products and services.

30.     In 2014, Tesla announced Tesla Autopilot, a suite of purported ADAS features including automated lane-centering, traffic-aware cruise control, lane changes, semi-autonomous navigation, and self-parking.  In September 2014, all Tesla cars started shipping with the sensors and software necessary to support the Autopilot system.  Since then, the Company has touted refinements and enhancements to the Company's ADAS and Autopilot features, including its FSD software, which purportedly enables Tesla vehicles to drive autonomously to a destination entered in the car's navigation system.

**Materially False and Misleading Statements Issued During the Class Period**

31.     The Class Period begins on February 19, 2019, when Tesla filed an annual report on Form 10-K with the SEC during pre-market hours, reporting the Company's financial and operational results for the quarter and year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K contained the following representations regarding the purported safety-enhancing features and capabilities of Tesla's Autopilot technology, as well as advancements in the development of the same:

### Self-Driving Development

We have expertise in developing self-driving systems, and currently offer in our vehicles an advanced driver assist system that we refer to as Autopilot, including auto-steering, traffic aware cruise control, automated lane changing, automated parking, Summon and driver warning systems. In October 2016, we began equipping all Tesla vehicles with hardware needed for full self-driving capability, including cameras that provide 360 degree visibility, updated ultrasonic sensors for object detection, a forward-facing radar with enhanced processing, and a powerful new onboard computer. Our Autopilot systems relieve our drivers of the most tedious and potentially dangerous aspects of road travel. Although, at present, the driver is ultimately responsible for controlling the vehicle, our system provides safety and convenience functionality that allows our customers to rely on it much like the system that airplane pilots use when conditions permit. This hardware suite, along with over-the-air firmware updates and field data feedback loops from the onboard camera, radar, ultrasonics, and GPS, enables the system to continually learn and improve its performance.

Additionally, we continue to make significant advancements in the development of fully self-driving technologies.

(Emphasis in original.)

32.     The 2018 10-K also repeatedly referenced the purported "high performance" of the Autopilot system, including its "active safety and convenience features[.]"

33.     In addition, the 2018 10-K purported to warn that Tesla "***may*** become subject to product liability claims" (emphasis added) regarding, *inter alia*, the Company's Autopilot technology, while simultaneously downplaying such risks and touting the purported safety of the Company's vehicles, stating, in relevant part:

> ***Although we design our vehicles to be the safest vehicles on the road***, product liability claims, even those without merit, could harm our business, prospects, operating results and financial condition. The automobile industry in particular experiences significant product liability claims and we face inherent risk of exposure to claims in the event our vehicles do not perform or are claimed to not have performed as expected. As is true for other automakers, our cars have been involved and we expect in the future will be involved in crashes resulting in death or personal injury, and such crashes where Autopilot is engaged are the subject of significant public attention. We have experienced and we expect to continue to face claims arising from or related to misuse or claimed failures of new technologies that we are pioneering, including Autopilot in our vehicles . . . . A successful product liability claim against us could require us to pay a substantial monetary award. Our risks in this area are particularly pronounced given the relatively limited number of vehicles and energy storage products delivered to date and limited field experience of our products. Moreover, a product liability claim could generate substantial negative publicity about our products and business and could have a material adverse effect on our brand, business, prospects and operating results.

(Emphasis added.)

34.     Appended as an exhibit to the 2018 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Musk and Ahuja "certif[ied], pursuant to 18 U.S.C. Section 1350, that, to [their] knowledge, the [2018 10-K] (i) fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act] and (ii) that the information contained in [the 2018 10-K] fairly presents, in all material respects, the financial condition and results of operations of Tesla, Inc."

35.     On April 3, 2019, Tesla issued a press release stating that "Tesla is making significant progress in the development of its autonomous driving software and hardware, including our FSD computer, which is currently in production and which will enable full-self driving via future over-the-air software updates."

36.     On April 14, 2019, hyping the viability of Tesla's Autopilot technology, Defendant Musk tweeted that "[b]uying a car in 2019 that can't upgrade to full self-driving is like buying a horse instead of a car in 1919":



37.     Likewise, on April 22, 2019, Defendant Musk posted a nearly four-hour video under the caption "Tesla Full Self-Driving," which depicted footage of Tesla cars purportedly driving autonomously, as well as Musk and other Tesla executives discussing at length the various features of the Autopilot system, at a "Tesla Autonomy Day" event:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS



38.     On February 2, 2020, Defendant Musk tweeted that "Tesla will soon have over a million connected vehicles worldwide with sensors & compute needed for full self-driving, which is orders of magnitude more than everyone else combined, giving you the best possible dataset to work with", thereby endorsing the viability of the Autopilot system's technology.

39.     On February 13, 2020, Tesla filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2019 (the "2019 10-K").  The 2019 10-K contained the following representations regarding the purported safety-enhancing features and capabilities of Tesla's Autopilot and FSD technologies, as well as advancements in the development of the same:

### Self-Driving Development

We have expertise in developing technologies, systems and software to achieve self-driving vehicles. We are equipping all new Tesla vehicles with hardware needed for full self-driving in the future, including a new powerful and proprietary on-board computer that we introduced in 2019. This hardware suite enables field data from the on-board camera, radar, ultrasonics, and GPS to continually train and improve our neural network for real-world performance.

Currently, we offer in our vehicles certain advanced driver assist systems under our Autopilot and FSD options, including auto-steering, traffic aware cruise control, automated lane changing, automated parking, driver warning systems, and a Smart Summon feature that enables vehicles to be remotely summoned over short distances in parking lots and driveways. These systems relieve our drivers of the most tedious and potentially dangerous aspects of road travel, and the field data feedback loops from the on-board hardware, as well as over-the-air firmware updates, allow us to improve them over time. Although at present the driver is ultimately responsible for controlling the vehicle, our systems provide safety and convenience functionality that allows our customers to rely on them much like the system that airplane pilots use when conditions permit.

(Emphasis in original.)

40.    Similarly, the 2019 10-K represented that, "[c]ombined with technical advancements in our [*inter alia*] . . . Autopilot and [FSD] hardware . . . , our electric vehicles boast advantages such as . . . superior acceleration, handling and safety characteristics"; and that "[w]e believe that a key factor in our success will be our Autopilot and FSD technologies that currently enable the driver-assistance features in our vehicles, and in which we are making significant strides through our proprietary and powerful FSD computer and remotely updateable artificial intelligence software."

41.    The 2019 10-K also contained substantively the same generic, boilerplate provision as referenced in ¶ 33, *supra*, regarding the risk that Tesla "***may***" be subjected to product liability claims regarding, among other things, the Company's Autopilot and FSD technologies, while simultaneously downplaying that risk and touting that "we design our vehicles to be the safest vehicles on the road[.]"

42.    Appended as an exhibit to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 34, *supra*, signed by Defendants Musk and Kirkhorn.

43.    On February 8, 2021, Tesla filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2020 (the "2020 10-K"). The 2020 10-K contained the following representations

regarding the purported safety-enhancing features and capabilities of Tesla's Autopilot and FSD

technologies, as well as advancements in the development of the same:

> ### Self-Driving Development
>
> We have expertise in developing technologies, systems and software to enable self-driving vehicles using primarily vision and radar-based sensors. Our FSD Computer runs our neural networks in our vehicles, and we are also developing additional computer hardware to better enable the massive amounts of field data captured by our vehicles to continually train and improve these neural networks for real-world performance.
>
> Currently, we offer in our vehicles certain advanced driver assist systems under our Autopilot and FSD options. Although at present the driver is ultimately responsible for controlling the vehicle, our systems provide safety and convenience functionality that relieves drivers of the most tedious and potentially dangerous aspects of road travel much like the system that airplane pilots use, when conditions permit. As with other vehicle systems, we improve these functions in our vehicles over time through over-the-air updates.
>
> We intend to establish in the future an autonomous Tesla ride-hailing network, which we expect would also allow us to access a new customer base even as modes of transportation evolve.

(Emphasis in original.)

44.     The 2020 10-K also contained substantively the same generic, boilerplate

provision as referenced in ¶ 33, *supra*, regarding the risk that Tesla "***may***" be subjected to product

liability claims regarding, among other things, the Company's Autopilot and FSD technologies,

while simultaneously downplaying that risk.

45.     Appended as an exhibit to the 2020 10-K were substantively the same SOX

certifications as referenced in ¶ 34, *supra*, signed by Defendants Musk and Kirkhorn.

46.     The statements referenced in ¶¶ 31-45 were materially false and misleading

because Defendants made false and/or misleading statements, as well as failed to disclose material

adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants

made false and/or misleading statements and/or failed to disclose that: (i) Defendants had

significantly overstated the efficacy, viability, and safety of the Company's Autopilot and FSD

technologies; (ii) contrary to Defendants' representations, Tesla's Autopilot and FSD technologies created a serious risk of accident and injury associated with the operation of Tesla vehicles; (iii) all the foregoing subjected Tesla to an increased risk of regulatory and governmental scrutiny and enforcement action, as well as reputational harm; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

47.    On Sunday, April 18, 2021, media outlets reported that a Tesla vehicle with "no one" driving it had crashed into a tree, killing two passengers near Houston, Texas in a "fiery" crash.  For example, local Houston, Texas news station KPRC 2 published an article that day reporting, in relevant part:

> A Memorial Hermann doctor has been identified as one of two men killed when the Tesla they were in crashed into a tree. The accident has made national headlines because **local officials investigating the accident say no one was driving the vehicle**.
>
> * * *
>
> Harris County Precinct 4 Constable Mark Herman told KPRC 2 that the investigation showed **"no one was driving" the fully electric 2019 Tesla when the accident happened. There was a person in the passenger seat of the front of the car and in the rear passenger seat of the car.**
>
> * * *
>
> Constable Herman said authorities believe no one else was in the car and that it burst into flames immediately. He said he believes **it wasn't being driven by a human.**
>
> Harris County Constable Precinct 4 deputies said the vehicle was traveling at a high speed when it **failed to negotiate a cul-de-sac turn**, ran off the road and hit the tree.

(Emphases added.)

48.    The same KPRC 2 article also quoted the following statement received from NHTSA regarding the incident:

13

NHTSA is aware of the tragic crash involving a Tesla vehicle outside of Houston, Texas. NHTSA has immediately launched a Special Crash Investigation team to investigate the crash. We are actively engaged with local law enforcement and Tesla to learn more about the details of the crash and will take appropriate steps when we have more information.

49.     On this news, Tesla's stock price fell $25.15 per share, or 3.4%, to close at $714.63 per share on April 19, 2021.

50.     Then, on August 16, 2021, during pre-market hours, media outlets reported that NHTSA had opened a formal investigation into Tesla's Autopilot system after a series of collisions with parked emergency vehicles.  For example, an article published by *Forbes* that day stated, in relevant part:

> ***U.S. regulators have opened up the biggest review of Tesla's Autopilot since the driving-assistance feature was introduced, centered around a string of collisions with emergency vehicles that resulted in numerous injuries and at least one fatality.***
>
> The [NHTSA] says its Office of Defect Investigations opened the review on August 13 to look into 11 crashes involving Teslas hitting vehicles at "first responder scenes." An estimated 765,000 vehicles produced between 2014 and 2021 and including every model in Tesla's lineup-the Model S, X, 3 and Y-are covered in the investigation.
>
> It will "assess the technologies and methods used to monitor, assist and enforce the driver's engagement with the dynamic driving task during Autopilot operation," NHTSA said. The investigation will assess the effectiveness of the system's "Object and Event Detection and Response" and circumstances under which Autopilot is designed to be functional.
>
> \* \* \*
>
> The investigation is the biggest in company history and comes as Tesla expands availability of its so-called [FSD] feature, which the company has told California regulators isn't actually autonomous driving technology. NHTSA in January 2017 concluded an investigation into a Model S crash in Florida that killed the vehicle's owner who was using Autopilot at the time without finding the company at fault. The family of a Model X driver who was killed in a Silicon Valley crash while using the system sued Tesla in May 2019 saying the technology is defective.
>
> Since the system was introduced seven years ago, safety advocates have raised concerns that the Autopilot name suggests the driver-assistance feature can lead many users to place too much confidence in it. That's been born out by numerous

Tesla owners posting videos over the years treating Autopilot as an autonomous system, with some sleeping at the wheel or even sitting in the back seat while traveling down the highway.

(Emphasis added.)

51.     On this news, Tesla's stock price fell $31.00 per share, or 4.32%, to close at $686.17 per share on August 16, 2021.  Despite the declines in Tesla's stock price on April 19 and August 16, 2021, the Company's common stock continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding Tesla's Autopilot and FSD technologies.

52.     For example, on February 7, 2022, Tesla filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 10-K").  That filing contained substantively the same statements as referenced in ¶ 43, *supra*, regarding the purported safety-enhancing features and capabilities of Tesla's Autopilot and FSD technologies, as well as advancements in the development of the same.

53.     In addition, the 2021 10-K contained substantively the same generic, boilerplate provision as referenced in ¶ 33, *supra*, regarding the risk that Tesla "***may***" be subjected to product liability claims regarding, among other things, the Company's Autopilot and FSD technologies, while simultaneously downplaying that risk.

54.     Appended as an exhibit to the 2021 10-K were substantively the same SOX certifications as referenced in ¶ 34, *supra*, signed by Defendants Musk and Kirkhorn.

55.     The statements referenced in ¶¶ 52-54 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had

significantly overstated the efficacy, viability, and safety of the Company's Autopilot and FSD technologies; (ii) contrary to Defendants' representations, Tesla's Autopilot and FSD technologies created a serious risk of accident and injury associated with the operation of Tesla vehicles; (iii) all the foregoing subjected Tesla to an increased risk of regulatory and governmental scrutiny and enforcement action, as well as reputational harm; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

56.     On June 3, 2022, during pre-market hours, media outlets reported that NHTSA had issued a formal inquiry to Tesla about the Autopilot and FSD features for certain models of its vehicles after receiving complaints from more than 750 owners of the vehicles about sudden and unexpected braking with no immediate cause.  For example, an article published by *Street Insider* that day stated, in relevant part:

> US authorities have received 758 complaints concerning Tesla . . . vehicles unexpectedly braking. The electric vehicle manufacturer must respond to the issue by June 20th. Tesla has issued several recalls this year. However, the latest complaint count to the [NHTSA] has more than doubled since February.
>
> The NHTSA revealed the number of complaints in a 14-page letter to the company asking the automaker for all consumer and field reports it has received about false braking, as well as reports of crashes, injuries, deaths and property damage claims. It also asks whether the company's "Full Self Driving" and automatic emergency braking systems were active at the time of any incident.
>
> ***In opening the probe, the agency said it was looking into vehicles equipped with automated driver-assist features such as adaptive cruise control and "Autopilot," which allows them to automatically brake and steer within their lanes.***
>
> "Complainants report that the rapid deceleration can occur without warning, and often repeatedly during a single drive cycle," the agency says.

(Emphasis added.)

57.     On this news, Tesla's stock price fell $71.45 per share, or 9.22%, to close at $703.55 per share on June 3, 2022.  Despite this decline in Tesla's stock price, the Company's common stock continued to trade at artificially inflated prices throughout the remainder of the

Class Period because of Defendants' continued misstatements and omissions regarding Tesla's Autopilot and FSD technologies.

58.     For example, on August 18, 2022, Defendant Musk tweeted, in relevant part, that "side mirrors won't be needed in a self-driving future", thereby once again endorsing the viability of the Autopilot system's technology and FSD Beta software and suggesting that the Company's ADAS technologies obviated the need for basic, common-sense safety practices (*e.g.*, checking a vehicle's mirrors).

59.     The statement referenced in ¶ 58 was materially false and misleading because Defendants failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, the statement was false and/or misleading and/or failed to disclose that: (i) Defendants had significantly overstated the efficacy, viability, and safety of the Company's Autopilot and FSD technologies; (ii) contrary to Defendants' representations, Tesla's Autopilot and FSD technologies created a serious risk of accident and injury associated with the operation of Tesla vehicles; (iii) all the foregoing subjected Tesla to an increased risk of regulatory and governmental scrutiny and enforcement action, as well as reputational harm; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

60.     On January 27, 2023, during after-market hours, media outlets reported that the SEC was investigating statements made by Tesla and Defendant Musk concerning the Autopilot system, including whether Musk made inappropriate forward-looking statements regarding the Autopilot system.  For example, an article published by *Bloomberg News* that day stated, in relevant part:

> US regulators are investigating Elon Musk's role in shaping Tesla Inc.'s self-driving car claims, the latest effort by watchdogs to scrutinize the actions of the world's second-richest person.

The review is part of an ongoing [SEC] probe of the company's statements about its Autopilot driver-assistance system, according to a person with knowledge of the matter who asked not to be identified discussing aspects of the investigation that haven't been disclosed.

As Tesla's [CEO], the veracity of Musk's comments carry particular heft under the agency's rules. The SEC declined to comment. Musk and his attorney Alex Spiro didn't respond to requests for comment.

Musk is already clashing with the SEC on several fronts. But the regulator's Autopilot review directly touches on a business priority that Musk has singled out as crucial to Tesla's future.

***SEC officials are weighing whether Musk may have inappropriately made forward-looking statements, said the person. An investigation by the agency's enforcement unit doesn't always lead to consequences, but can result in lawsuits, fines or other civil penalties for companies and executives.***

It couldn't be determined specifically which of Musk's statements or activities about Autopilot have garnered the attention of the SEC.

Tesla's driver-assistance technology has for years been a focus of Musk. He personally directed the creation of a 2016 video that may have exaggerated the technology's capabilities. ***The video's promises of eventual fully autonomous, hands-free driving functionality have yet to materialize.***

In a behind-the-scenes glimpse into Musk's thinking about the Autopilot video, he told Tesla staff in internal emails in 2016, "I will be telling the world that this is what the car \*will\* be able to do." Musk continued, "not that it can do this upon receipt."

Tesla beats out its competitors on self-driving vehicles because "the car is upgradeable to autonomy," Musk said during a Twitter Spaces conversation in December. "That's something that no other car company can do," he added.

(Emphases added.)

61.     On this news, Tesla's stock price fell $11.24 per share, or 6.32%, to close at $166.66 per share on January 30, 2023, the next trading day.  Despite this decline in Tesla's stock price, the Company's common stock continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding Tesla's Autopilot and FSD technologies.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

62.     For example, on January 31, 2023, Tesla filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2022 (the "2022 10-K").  That filing contained substantively the same statements as referenced in ¶ 43, *supra*, regarding the purported safety-enhancing features and capabilities of Tesla's Autopilot and FSD technologies, as well as advancements in the development of the same.

63.     In addition, the 2022 10-K contained substantively the same generic, boilerplate provision as referenced in ¶ 33, *supra*, regarding the risk that Tesla "***may***" be subjected to product liability claims regarding, among other things, the Company's Autopilot and FSD technologies, while simultaneously downplaying that risk.

64.     Appended as an exhibit to the 2022 10-K were substantively the same SOX certifications as referenced in ¶ 34, *supra*, signed by Defendants Musk and Kirkhorn.

65.     The statements referenced in ¶¶ 62-64 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Defendants had significantly overstated the efficacy, viability, and safety of the Company's Autopilot and FSD technologies; (ii) contrary to Defendants' representations, Tesla's Autopilot and FSD technologies created a serious risk of accident and injury associated with the operation of Tesla vehicles; (iii) all the foregoing subjected Tesla to an increased risk of regulatory and governmental scrutiny and enforcement action, as well as reputational harm; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Truth Fully Emerges**

66.    On February 16, 2023, media outlets reported that NHTSA had ordered a recall of nearly 363,000 Tesla vehicles equipped with the Company's FSD "Beta" software, stating that the software may allow the equipped vehicles to act "in an unlawful or unpredictable manner," increasing the risk of a crash.  For example, an article published by *Bloomberg News* that day stated, in relevant part:

> Tesla Inc. is recalling 362,758 vehicles due to a crash risk associated with its so-called Full Self-Driving Beta software, according to US authorities.
>
> The system "may allow the vehicle to act unsafe around intersections," including traveling straight through an intersection from a turn lane and proceeding through steady-yellow traffic lights, according to a filing Thursday. Tesla is expected to fix the issue through an over-the-air software update by April 15, the US National Highway Traffic Safety Administration said.
>
> The system's errors "could increase the risk of a collision if the driver does not intervene," the NHTSA said.
>
> * * *
>
> The agency said it first notified Tesla on Jan. 25 that it had identified "potential concerns related to certain operational characteristics of FSD Beta in four specific roadway environments" and requested that the automaker file a recall.
>
> Tesla met with the agency multiple times in the following days. The company did not concur with the agency's analysis, but decided on Feb. 7 to move forward with the recall "out of an abundance of caution," according to NHTSA.

67.    On this news, Tesla's stock price fell $12.20 per share, or 5.69%, to close at $202.04 per share on February 16, 2023.

68.    Then, on February 18, 2023, media outlets reported that a Tesla vehicle had crashed into a fire truck that was responding to an earlier accident, killing the driver and injuring a passenger and four firefighters.  News reports linked the crash with prior reports of Tesla vehicles crashing into stationary emergency vehicles as a consequence of poorly performing

ADAS technologies, increasing market and public concerns regarding the Autopilot system in Tesla's vehicles.  For example, an article published by *Reuters* that day stated, in relevant part:

> A Tesla . . . driver in California died early on Saturday after crashing into a fire truck on an interstate highway, the fire department said.
>
> ***U.S. regulators are investigating Tesla vehicles with the Autopilot driver assistance system over a string of crashes with parked emergency vehicles.***
>
> Tesla did not immediately respond to Reuters requests for comment outside of business hours.
>
> The Contra Costa County Fire Protection District Department said in a tweet that a passenger in the Tesla was taken to the hospital in critical condition. An official said four firefighters were released with minor injuries after evaluation.
>
> The department said the truck had been blocking lanes of I-680 after a previous accident.
>
> ***The [NHTSA] said on Thursday its investigation, opened in 2021, "into Tesla's Autopilot and associated vehicle systems remains open and active." It is reviewing whether Tesla vehicles adequately ensure drivers are paying attention.***
>
> The statement followed Tesla announcing a recall of more than 362,000 U.S. vehicles to update its Full Self-Driving Beta software after regulators raised concerns about the driver assistance system did not adequately adhere to traffic safety laws and could cause crashes.

(Emphases added.)

69.     On this news, Tesla's stock price fell $10.94 per share, or 5.25%, to close at $197.37 per share on February 21, 2023, the next trading day.

70.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tesla common stock during the Class Period (the "Class"); and were damaged

21

upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

72.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Tesla common stock was actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Tesla or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

73.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

74.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

75.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tesla;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- whether the Individual Defendants caused Tesla to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Tesla common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

76.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

77.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tesla common stock is traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

- Plaintiff and members of the Class purchased, acquired and/or sold Tesla common stock between the time the Defendants failed to disclose or

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

78.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

79.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

80.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

81.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

82.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tesla

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tesla common stock and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

83.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tesla common stock.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tesla's finances and business prospects.

84.     By virtue of their positions at Tesla, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

85.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Tesla, the Individual Defendants had knowledge of the details of Tesla's internal affairs.

86.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Tesla.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tesla's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tesla common stock was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Tesla's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tesla common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

87.     During the Class Period, Tesla common stock was traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tesla common stock at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tesla common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Tesla common stock

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

88.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

89.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

90.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     During the Class Period, the Individual Defendants participated in the operation and management of Tesla, and conducted and participated, directly and indirectly, in the conduct of Tesla's business affairs.  Because of their senior positions, they knew the adverse non-public information about Tesla's misstatement of income and expenses and false financial statements.

92.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tesla's financial condition and results of operations, and to correct promptly any public statements issued by Tesla which had become materially false or misleading.

93.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

public filings which Tesla disseminated in the marketplace during the Class Period concerning Tesla's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tesla to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Tesla within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tesla common stock.

94.	Each of the Individual Defendants, therefore, acted as a controlling person of Tesla.  By reason of their senior management positions and/or being directors of Tesla, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tesla to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Tesla and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

95.	By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tesla.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.	Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.	Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.	Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.	Awarding such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  February 27, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I,   thomas lamontagne                              , make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private

Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against Tesla, Inc. ("Tesla") and authorize the filing

of a comparable complaint on my behalf.

3.     I did not purchase or acquire Tesla securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Tesla securities during the Class Period as specified in the

Complaint, including providing testimony at deposition and trial, if necessary.  I understand that

the Court has the authority to select the most adequate lead plaintiff in this action.

5.     The attached sheet lists all of my transactions in Tesla securities during the Class

Period as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of

the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed    2/23/23

             **(Date)**

                                                                **(Signature)**

                            Thomas Lamontagne
                               **(Type or Print Name)**

Tesla Inc. (TSLA)                                                      Thomas Lamontagne

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Puchase | 3/27/2020 | 12 | $512.6083 |
| Puchase | 4/1/2020 | 4 | $504.5933 |
| Puchase | 4/13/2020 | 4 | $639.8787 |
| Puchase | 4/28/2020 | 1 | $769.7156 |
| Puchase | 4/28/2020 | 1 | $777.5299 |
| Puchase | 5/4/2020 | 21 | $731.5626 |
| Puchase | 5/4/2020 | 15 | $740.9399 |
| Puchase | 5/4/2020 | 2 | $738.1001 |
| Puchase | 5/4/2020 | 1 | $733.7399 |
| Puchase | 6/10/2020 | 2 | $1,018.0865 |
| Puchase | 7/9/2020 | 4 | $1,376.8700 |
| Puchase | 7/13/2020 | 2 | $1,769.0000 |
| Puchase | 8/18/2020 | 3 | $1,866.4183 |
| Puchase | 8/19/2020 | 1 | $1,902.3600 |
| Puchase | 8/21/2020 | 3 | $2,073.5499 |
| Puchase | 8/26/2020 | 1 | $2,108.4800 |
| Puchase | 8/27/2020 | 1 | $2,211.6000 |
| Puchase | 8/27/2020 | 1 | $2,211.5750 |
| Puchase | 8/28/2020 | 1 | $2,273.6400 |
| Puchase | 9/1/2020 | 12 | $498.6200 |
| Puchase | 11/24/2020 | 4 | $544.6500 |
| Puchase | 12/30/2020 | 11 | $688.3651 |
| Puchase | 1/6/2021 | 15 | $760.0307 |
| Puchase | 1/11/2021 | 20 | $823.9700 |
| Puchase | 1/11/2021 | 7 | $808.7228 |
| Puchase | 1/13/2021 | 2 | $842.3519 |
| Puchase | 1/28/2021 | 50 | $834.2700 |
| Puchase | 1/28/2021 | 25 | $833.8800 |
| Puchase | 2/1/2021 | 25 | $821.7500 |
| Puchase | 2/1/2021 | 50 | $827.5748 |
| Puchase | 2/23/2021 | 30 | $702.8500 |
| Puchase | 2/24/2021 | 40 | $727.8699 |
| Puchase | 3/9/2021 | 150 | $644.4600 |
| Puchase | 3/9/2021 | 200 | $667.6899 |
| Puchase | 3/26/2021 | 25 | $617.8999 |
| Puchase | 3/31/2021 | 25 | $670.5150 |
| Puchase | 5/14/2021 | 25 | $590.4099 |
| Puchase | 2/24/2022 | 100 | $746.9400 |
| Sale | 5/4/2020 | (22) | $701.0200 |
| Sale | 5/4/2020 | (21) | $730.5874 |
| Sale | 2/23/2021 | (10) | $675.4100 |
| Sale | 2/23/2021 | (5) | $677.1332 |
| Sale | 3/4/2021 | (40) | $626.9550 |
| Sale | 3/4/2021 | (200) | $615.0801 |
| Sale | 3/4/2021 | (221) | $612.0027 |
| Sale | 3/9/2021 | (150) | $664.1101 |
| Sale | 2/24/2022 | (275) | $701.1900 |
| Received 5:1 Split | 8/30/2020 | 148 | |
| Received 3:1 Split | 8/25/2022 | 200 | |